BIBB MFG. CO. v. BOWERS.

(Circuit Court of Appeals, Fifth Circuit. December 12, 1905.)

No. 1,467.

PATENTS—INFRINGEMENT—STOP MECHANISM FOR WINDING MACHINE.

The Bowers patent, No. 727,888, for a weight stop motion adapted for use in twine winding spindles, does not cover a pioneer invention, in view of the prior art, and must be construed in matters of infringement in accordance with the rules applicable to ordinary combination patents. As so construed, held not infringed by the machine of the Worrill patent, No. 736,809, which does not contain all the elements of the Bowers combination.

In Error to the Circuit Court of the United States for the Southern District of Georgia.

Isaac Hardeman, Geo. S. Jones, and Hector T. Fenton, for plaintiff in error.

L. D. Moore, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and MAXEY, District Judge.

PARDEE, Circuit Judge.   Bowers' patent of May 12, 1903, on application filed July 14, 1902, which is the basis of this suit, "relates to new and useful improvements in weight stop motions adapted for use in twine winding spindles," and his allowed claims are:

"(1) A stop mechanism for winding-spindles, consisting of a frame, a tilting lever mounted thereon, having a slotted end, a vertically adjustable block mounted on said lever, a stub-shaft carried by said block, an eccentrically journaled weighted wheel on said stub-shaft, a spring-actuated rod having a notch therein, a notched casing in which said rod is mounted to have a longitudinal movement, the free end of said lever designed to engage in said notches when they are brought into registration and belt-shifting mechanism actuated by said rod as the lever is released from said notches, as set forth.

"(2) A stop mechanism for winding-machines, comprising a frame, a spindle mounted therein, a lever having a tilting motion, an eccentrically-mounted weighted wheel journaled on said lever, a hollow casing having a notch in its circumference, a rod mounted in said casing and having a notch therein which is adapted to be brought into registration with the notch in said casing, the free end of said lever adapted to engage said notches then in registration, a bar fastened to said rod, an arm or rod secured to the other end of said bar, a spring bearing against said arm and a belt-shifting bar keyed to said notched rod, as set forth."

The Worrill patent of August 18, 1903, on application filed August 13, 1902, which the manufacturing company is using, and which is alleged to be an infringement of Bowers' patent, relates to ball-winding machines, and in his application he says:

"The invention consists of a rotary ball-spindle, driving means therefor, a clutch for coupling said driving means with said spindle, a lever for operating said clutch, and a weighted eccentric on said lever adapted to be engaged by a ball on said spindle for swinging said lever on its fulcrum and automatically moving said clutch so as to disconnect said spindle from said driving means."

His first two claims are:

"(1) In a ball-winder, the combination with a rotary spindle, driving mechanism therefor and a clutch for connecting and disconnecting said spindle from said driving mechanism, of a rotary cam or eccentric operatively connected with said clutch and adapted to be engaged by the ball, when the same reaches a certain predetermined size, for throwing said spindle out of operation.

"(2) In a ball-winder, the combination with a rotary spindle, driving mechanism therefor and a clutch for connecting and disconnecting said spindle from said driving mechanism, of a lever connected with said clutch for operating it, and a rotary cam or eccentric on said lever adapted to be engaged by the ball, when the same reaches a certain predetermined size, for swinging said lever and thereby shifting said clutch to throw said spindle out of operation."

Both are in effect combination patents, and, judging from the claims and the models in evidence, are, aside from the result produced, alike

in only one respect, to wit, "the eccentrically journaled weighted wheel" of Bowers is substantially the same as the "weighted eccentric" or "rotary cam or eccentric" of Worrill. The state of the art at the time Bowers applied for his patent is shown by a British patent granted in 1891 to Barlow; a British patent applied for September 12, 1897, accepted January 8, 1898, to Grobli; a British patent granted to Horrocks, applied for December 28, 1898, accepted November 11, 1899; and a United States patent to Hanson granted December 2, 1902, on an application filed November 8, 1898. All these patents are for stop-motion twine-winding machines, in which the stop motion is initiated by contact with the ball of twine when filled, and more or less automatic results by different mechanisms are produced. All these patents antedated Bowers', and are intended to produce the same result. Grobli used a cam device with involved mechanism operating to throw out of contact the friction pulleys driving the spindle, so as to allow the finished balls to be removed and cut the thread.

Horrocks, in describing the operation of his invention, says:

"In some cases I combine with the mechanism just described means for automatically arresting the winding when the bobbin has attained any predetermined diameter. To this end I use an eccentric roller or bowl (suitably supported in a bracket or carrier provided with means for adjustment to suit different diameters), against which the bobbin bears when the required diameter is reached. The rolling contact of the bobbin causes the eccentric bowl or roller to rotate, and thereby to lift or remove the bobbin from the winding drum. A pin or catch limits the rotation of the eccentric bowl or roller. Where this latter device is applied to a machine provided with the hereinbefore described stop motion, controlled by a detector mechanism, the slackening of the thread on the bobbin being removed from the drum will cause the detector mechanism to come into action in the ordinary way. In such a combination the bracket carrying the eccentric bowl or roller (which may be fluted or otherwise fashioned to "bite" against the bobbin) is supported by the swing frame or bobbin carrier, so as to fall away when the bobbin falls. An incline on the swing frame lifts the bracket back into the working position when winding has to be resumed."

His first two claims are:

"(1) In a machine in which a bobbin or tube is wound by rolling contact against the surface of a drum, the combination therewith of an eccentric bowl or roller which is caused to make a partial rotation (and thereby remove the bobbin from contact with the drum) by the friction of the bobbin itself, when the latter has attained a predetermined diameter substantially as set forth and shown.

"(2) In a drum winding machine, the combination of a hinged bobbin carrier, b, a bracket, $q^1$, and an eccentric roller or bowl, q, provided with means for adjustment for different diameters of bobbins substantially as and for the purpose set forth and described, with reference to the left hand side of figures 1 and 2 of the accompanying drawings."

The prior Hanson patent claims:

"(4) In a cop-winding machine, including thread-feeding mechanism, the combination with main and secondary shafts, and intermediate gearing therefor, of a movable frame carrying a revoluble cop-support, a shaft in said frame, a clutch therefor, gearing connecting said last-named shaft with the cop-support and with the secondary shaft, and mechanism whereby the clutch is automatically released through the medium of the cop.

"(5) In a cop-winding machine, the combination with the movable frame carrying a revoluble cop-support, of mechanism for rotating said support, a clutch for said mechanism, a cam member on the frame, connections between the same and the clutch, a rocking arm, actuating means therefor, and devices on said frame adapted to be released through the medium of the cop and moved into the path of the rocking arm."

Barlow, in his specifications, says:

"My invention relates to improvements in pirn winding frames and my improvements consist chiefly in a combined arrangement of weighted levers and eccentric for automatically disengaging the pirn, when fully wound, from its driving gear and so stopping it. In my improved machine each pirn is preferably held between a pair of cups or discs supported in the forked end of a weighted lever; on the pirn spindle or axis is secured a toothed wheel, which, while the pirn is being wound, gears with a toothed wheel on the driving shaft of the machine and so drives the pirn. Below the above-named weighted lever is a second weighted lever which carries at one end an eccentric, the axis of which is parallel with the axis of the pirn. This eccentric is free to be turned in its bearings and lies below the pirn and out of contact with it until the pirn is fully wound. At the other end of the second weighted lever is a projecting arm which comes under and holds up the back or weighted end of the first-named lever until the pirn is fully wound."

And Barlow's claims are:

"(1) The combined arrangement of the weighted levers, f, o, and eccentric, p, for automatically disengaging the toothed wheels, k', and stopping the pirn when fully wound, substantially as herein set forth.

"(2) The combination with a pirn supported in a forked weighted lever, of an eccentric carried by a weighted lever, which supports the forked lever during the winding of the pirn, and automatically disengages the pirn from its driving gear when fully wound, substantially as herein set forth."

In this state of the art Bowers cannot claim to be a pioneer in the invention of "weight stop motions adapted for use in twine winding spindles," because of his application and use of "the eccentrically journaled weighted wheel," and his patent should be construed in matters of infringement according to the rules applied to ordinary combination patents.

On this writ of error the case is controlled by the rules declared in Singer Company v. Cramer, 192 U. S. 265, 24 Sup. Ct. 291, 48 L. Ed. 437, holding:

"Where it appears from the face of the patents that extrinsic evidence is not needed to explain the terms of art therein, or to apply the descriptions to the subject-matter, and the court is able from mere comparison to comprehend what are the inventions described in each patent, and from such comparison whether one device infringes upon the other the question of infringement or no infringement is one of law and susceptible of determination on a writ of error. Where the principal elements of a combination are old, and the devising of means for utilizing them does not involve such an exercise of inventive faculties as entitles the inventor to claim a patent broadly for their combination, the patent therefor is not a primary one, and is not entitled to the broad construction given to a pioneer patent. * * * Where the patent is not a primary patent, and there is no substantial identity in the character of two devices except as the combination produces the same effect, and there are substantial and not merely colorable differences between them, there is no infringement of the earlier patent."

Singer v. Cramer is followed in Cimiotti Unhairing Co. v. Am. Fur. Ref. Co., 198 U. S. 399, 25 Sup. Ct. 697, 49 L. Ed. 1100, and there it is again said:

"In making his claim the inventor is at liberty to choose form of expression, and while the courts may construe the same in view of the specifications and the state of the art, they may not add to or detract from the claim. And it is equally true that, as the inventor is required to enumerate the elements of his claim, no one is an infringer of a combination claim unless he uses all the elements thereof."

It follows that the Circuit Court should have instructed the jury to find a verdict for the defendant.

The judgment of the Circuit Court is reversed, and the cause is remanded, with instructions to award a new trial.