**WARD et al. v. SHOPE BRICK CO.**

(Circuit Court of Appeals, Ninth Circuit. January 5, 1925.)

No. 4290.

Patents ⊙⟞328—985,709, for method of forming waterproof faced cement block, held not infringed.

The Shope patent, No. 985,709, for method of forming waterproof faced cement blocks, *held* not infringed.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit in equity by the Shope Brick Company against Roy Ward and Otto Peterson, partners as Ward & Peterson. Decree for complainant, and defendants appeal. Reversed, with directions.

Joseph L. Atkins and Leicester B. Atkins, both of Portland, Or., for appellants.

Robert R. Rankin, of Portland, Or., for appellee.

Before HUNT and RUDKIN, Circuit Judges, and BOURQUIN, District Judge.

BOURQUIN, District Judge. In this suit appellee alleged infringement of three patents; appellants denied invention and infringement. At trial, appellee limited evidence to patent No. 985,709, and the District Court sustained the patent, found infringement, and awarded usual relief.

The patent purports to be for invention of "certain new and useful improvements in methods of waterproofing cement blocks," and states that the object of the invention is to "waterproof the exposed face of the block without the application of external pressure or the use of special waterproofing compounds, and in such manner that the block can be immediately removed from the mold." Of the old methods it declares the disadvantages are that use of the special compound "is apt to destroy perfect crystallization during the curing period, as well as to discolor the block," and, where not used, "the surface to be waterproofed must be thoroughly wet, in order that the cementitious material used for waterproofing shall enter the pores of the block and become thoroughly crystallized, so as to form a perfect union. * * * And the cementitious material will not enter the pores of the block except under pressure." The specifications then proceed in description and claims as follows:

"In the present method the block is first formed in the usual manner by mixing sand and cement in a slightly moist or semidry state, and pressing or tamping it in a mold. Water is next applied, as by sprinkling, to the face of the block in sufficient quantity to enter the pores or interstices of the block, and then a powder of cement, either neat or mixed with sand or other ingredients, is sifted upon the water, which is at the same time agitated, so thoroughly to saturate the face of the block. The water will thus enter the pores or voids of the block to the required depth, and carry with it the cement powder sifted thereon. The water serves both to carry the cement into the pores and to cause crystallization of the added cement, and no external pressure will be required to force the water and cement into the block. The face of the block is then stippled or otherwise treated as may be desired, and the block removed from the machine and cured in the usual manner.

"It will be understood that the main portion of the block remains in a comparatively dry state, so that it can be immediately removed from the mold, and all its faces, except those exposed to the water and crystallizing mixture, will be porous so that the mortar will adhere to them, while the outer face will be proof against the absorption of water, because all of the interstices and pores have been filled with crystallized cement.

"The word 'block' is here used generically to include a brick, tile, or other mass of any shape or size, as well as a 'block' technically so called.

"I claim as my invention:

"1. The herein described method of forming a waterproof faced cement block, which consists in first forming the block of suitable material in a semidry state, applying water to the face of the block in a sufficient quantity to enter the pores or interstices thereof, and adding cement to the water, whereby the cement will enter the pores or interstices with the water.

"2. The herein described method of forming a waterproof faced cement block which consists in first forming the block by mixing sand and cement in a semidry state and molding it, then applying water to the face of the block, then spreading cement upon the water and agitating the mixture to carry the cement into the interstices of the block to the required depth."

As the patent itself takes note of and is only an "improvement" in the art of waterproofing porous objects by means of cementitious material introduced, crystallized, and solidified in the voids or pores of the object, whether or not in connection with a superimposed coating of the material, it is apparent that the invention claimed is for neither process nor product, but is for only a particular way or method to apply existing processes in making a known product. In these circumstances, although the particular way or method may itself approach the dignity of a new process, the rule is narrow or rigid, but fair, construction of the specifications and claims of the patent. See Minerals Separation v. Butte, etc., Mining Co., 250 U. S. 345, 347, 39 S. Ct. 496, 63 L. Ed. 1019; Motion Picture Co. v. Universal Film Co., 243 U. S. 510, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959, cases cited 30 Cyc. 940. And where, as here, the art is simple and the patent plain, in construction the court has little if any need of partisan expert testimony. See Singer Co. v. Cramer, 192 U. S. 275, 24 S. Ct. 291, 48 L. Ed. 437.

Adverting to the particular way or meth-

od described and claimed in the patent, it is merely to impregnate with water-borne cement and by the natural force of gravity alone the surface layer of the porous object to be waterproofed, and without increasing the dimensions of the block or addition of a new layer upon its surface. In final analysis this is but resort to common knowledge that water will sink into the voids of porous objects, and carry with it any suspended mineral particles, which latter will settle and accumulate, and, if cementitious, will crystallize and solidify, rendering the porous object more or less impervious to water. To what extent this knowledge had been usefully applied is not in evidence, and we need not inquire, save to note that in that fashion, and in connection with puddling, ditches, canals, ponds, reservoirs, and the like were made water tight or proof from time immemorial.

We have some doubt that its extension to the uses of the patent involves invention within the rule of Potts v. Creager, 155 U. S. 608, 15 S. Ct. 194, 39 L. Ed. 275, and have more doubt of the extension's utility. We say we doubt the utility, because there is no evidence that appellee, or any one, at any time has practically employed the particular way or method of the patent to waterproof blocks, bricks, or the like. The rather meager and somewhat unsatisfactory evidence in behalf of appellee is not that it waterproofs bricks by placing water upon their faces, powdered cement upon the water, and by agitation causing water and cement to sink into the bricks, the particular way or method of the patent, but is that appellee applies said materials in any order, or together, and in situ mixes them into a slurry or thin mortar, trowels into the substance of the faces of the bricks, puddles them, intermingling and "keying" mortar and bricks, coats the faces with the mortar, and, with considerable pressure, trowels, "floats," and works it down, on or into the bricks, to secure the desired result. This practice is not the particular way or method described and claimed in the patent, and by the latter notified to the public. It is none other than the ancient and ordinary way to exclude moisture from brick, stone, plaster, stucco, or cement construction by a coat of cementitious or finer mortar plastered upon it.

The patent excludes pressure and counts upon gravity to do the work; appellee's practice employs pressure and physical force. The patent requires agitation and only to maintain the cement particles in suspension in the water as a carrier; the practice resorts to puddling, troweling, and "floating," to settle, deposit, fix, and solidify the cement particles in place. The patent designs to sink the cement into the porous object; the practice applies a coating of cement to the object.

Without more, mere comparison discloses that either is antithetical to the other, that similitude is absent, and to further point out contract is unnecessary; and, despite appellee's claim that patent and practice are one and the same, so obviously are they radically different that we need not marshal and gravely discuss appellee's fallacies to the contrary. As a matter of fact, so hard put is appellee to maintain its position, that the best its only expert can say for the novelty of the patent in an art he characterizes as "old as the pyramids," and to differentiate the patent from other methods, is: "In my mind this patent states—it is either that or nothing—I will make it very easy for you; mix in situ, that is what this patentee wishes to do. Whether he puts the water first or last, or what he does, this is his invention, as I see it. * * * A clear and concise and specific statement * * * that if you mix on the top of your brick you will get a result."

And appellee's counsel seizes upon this and argues it is the gist of the invention and patent. If that were all, we would not hesitate to declare the patent void for lack of novelty and utility. But that is not the description or claim of the patent, as appears to us without expert aid; and, if the patent is valid, appellee is not to be deprived of its benefit, however erroneous the explanation and reasoning of its witnesses and counsel. Whether or not valid need not be determined. The inconclusive state of the evidence, and our conclusion that there is no infringement, obviate necessity to resolve our doubts expressed, and require that the otherwise presumption of validity shall here prevail.

Appellants' practice, and which appellee claims is infringement, is no more nor less than the ancient art of plastering, viz.: A cementitious mortar, prepared as usual, is troweled upon and into the faces of the bricks, necessarily and as usual to some extent "keying" into any sufficient voids, and also coating new faces upon the bricks. If the new faces are to be roughened, they are "stippled" as usual with a wetted whisk broom. This is not at all the particular way or method of the patent, is no more like it than is appellee's practice, and does

not infringe; and, in view of what goes before, it suffices to say so.

Reversed with direction to enter decree for appellants.