**GIBBS v. EMERSON ELECTRIC MFG. CO. et al.**

**No. 263.**

District Court, W. D. Missouri, W. D.

Aug. 26, 1940.

Walter A. Leimer, of Kansas City, Mo., for plaintiff.

Lawrence C. Kingsland, of St. Louis, Mo. (Edmund C. Rogers and Estill E. Ezell, both of St. Louis, Mo., and Alfred R. Fuchs, of Kansas City, Mo., of counsel), for defendants.

REEVES, District Judge.

The defendant, the Missouri Valley Electric Company, a Missouri corporation, has filed a motion for judgment in this case upon the ground that from the facts already presented in this proceeding it is

obvious that there is no infringement of plaintiff's patent.

Heretofore, in response to an order for a bill of particulars, the plaintiff specified the particular devices of defendant, which he accused of infringing his patent. Following this, the defendant has produced in court such accused devices and has proffered them as exhibits.

On its motion for judgment of non-infringement and dismissal it becomes therefore a simple matter to read the claims of the plaintiff upon the accused structures for the purpose of ascertaining whether in fact there is infringement.

The controversy relates to the structure of electric fans.

It is claimed by plaintiff for his invention that the object thereof is "to provide for more efficient movement of air with a minimum amount of power with a given size fan"; and, also, that "other important features are to provide a fan structure which effects delivery of air at high pressures near the axis thereof, to reduce hum caused by the revolving blades, and to effect movement of the air in such a manner to eliminate back flow of air currents between the fan blades."

There is a recital in plaintiff's declaration for his patent that "in accomplishing these and other objects of the invention, *I have provided improved details of structure*, the preferred forms of which are illustrated in the accompanying drawings."

The statement by plaintiff that in working out his invention he had "provided improved details of structure" was one quite pertinent in relation to his invention for the reason that the electric fan has been in use for many years before the granting of plaintiff's patent of date March 3, 1936. It is necessary therefore to examine the application and claims submitted by the plaintiff so as to ascertain what particular "improved details of structure" were embodied in his device so as to entitle plaintiff to the letters patent granted him.

It is quite apparent from a painstaking examination of the patent itself, as well as the briefs of the parties, that the improved details of structure consist in fan blades of practically uniform size and width from the tip thereof to hub of the fan, or employing the language of the claims, "terminating at a common point," in the hub or "axis of rotation." It was required that the propelling surface for each of the blades must extend inwardly to that point. The main purpose of plaintiff's invention was to extend the fan blades at full width to the hub or axis of the device so as to prevent hum and back flow of air. This with other details of construction doubtless had such an effect.

Of course it was provided that the blades must be at right angles to the axis of rotation and that they should extend contiguously of a common plane. This latter particularly applied to the edges of the fan blades and is referred to by plaintiff as "radial edges." Every one must be familiar with the fact that electric fan blades are at right angles, or approximately so, to the axis of rotation and that as a consequence the edges would be radial. All electric fans are so constructed that the trailing edge, by an apparent contradiction in terms, is in front and the leading or cutting edge necessarily in the rear. This is made necessary for the propulsion of the air from the back to the front.

Indulging the presumption that plaintiff's patent is valid, an examination of the accused devices reveals that such structures differ widely from that structure upon which plaintiff holds a patent. In some of the accused devices or structures the blade edges are separated and do not touch each other; neither do the fan blades extend contiguously of a common plane. Nor do the propelling surfaces extend continuously from outer tips of the blades to the axis of rotation.

It is also disclosed by some of the devices that the fan blades are attached to hemispheric hubs. Such a detail of structure was not contemplated by plaintiff, nor does such a structure appear in any of the illustrations appended to the patent. Neither do the accused devices show that the edges mentioned as "radial" extend contiguously of a common plane. Whereas the cutting edge might extend contiguously of a common plane, this is not true of the trailing edges, as appears from an examination of the accused devices as exhibits. One of the accused devices or structures has a helicoidal or screw surface wound on a hemispherical hub. It resembles a spiral. It does not in any way infringe upon the elements set forth in plaintiff's claims and upon which letters patent are predicated. Omission of an element of patented combination avoids infringement, unless an equivalent is supplied. Simons v. Davidson Brick Co. 9 Cir., 106 F.2d 518.

1. An examination and study of the facts developed and presented in the course of this proceeding discloses to my mind a perfect case of non-infringement. It seems therefore a waste of time and money to proceed with the details of a trial when the facts are clear and sufficiently before the court to warrant a decision. It may be determined upon these facts that there is either infringement or non-infringement.

The litigation can be settled by such determination, and if the litigants should not be satisfied, the appellate court would be able upon the facts now before the court to say whether the conclusion of the trial court was correct or incorrect. The litigation could thus be ended without great expense to either of the litigants.

2. This is familiar and authorized practice. In Singer Mfg. Co. v. Cramer, 192 U.S. 265, 24 S.Ct. 291, 48 L.Ed. 437, the first paragraph of the syllabi succinctly and tersely expresses the law: "Where it appears from the face of the patents that extrinsic evidence is not needed to explain the terms of art therein, or to apply the descriptions to the subject matter, and the court is able from mere comparison to comprehend what are the inventions described in each patent, and from such comparison whether one device infringes upon the other the question of infringement or no infringement is one of law and susceptible of determination on a writ of error." (And now appeal).

If it appeared as a matter of law from documentary evidence disclosing the prior art that there was no infringement, it was proper to end the litigation by dismissing the suit. Coulter v. Eagle & Phenix Mills, 5 Cir., 35 F.2d 268; Bronk v. Charles H. Scott Co., 7 Cir., 211 F. 338.

The court has power to dismiss for non-infringement where it is able by mere comparison to comprehend the invention and is able from a mere comparison of the structures to determine whether one device infringes another. Stewart Warner Corporation v. Universal Lubricating Systems, D. C., 22 F.Supp. 563, affirmed, 3 Cir., 100 F.2d 1012.

The ruling in the Singer Mfg. Co. case, supra, was followed by the First Circuit in Automatic Pencil Sharpener Co. v. Boston Pencil Pointer Co., 279 F. 40.

Many other cases, both of the appellate and district courts, might be cited in support of the practice.

3. It is my view, as heretofore indicated, that the accused devices do not infringe plaintiff's patent and that same having appeared from incontrovertible proof, it is my duty to grant defendants' motion for judgment.

The defendants will prepare and submit a decree conformable to this ruling.