**KOHLOFF et al. v. FORD MOTOR CO.**

District Court, S. D. New York.

Jan. 8, 1941.

Murray M. Cowen, of New York City, for plaintiffs.

Drury W. Cooper, of New York City (I. Joseph Farley, of Detroit, Mich., of counsel), for defendant.

KNOX, District Judge.

On May 6, 1922, Paul Kohloff, one of the plaintiffs, made application for a patent upon a spark plug and coil connector. The following month he wrote a letter to Henry Ford calling attention to the application and suggesting that the invention was something that would be advantageous to the Ford Motor Company, then engaged in the manufacture of model T cars. Under date of June 26, 1922, defendant's experimental engineering department answered Kohloff's communication with the statement that the company was not interested in his "ignition device in connection with standard production of Ford motor vehicles." In such cars, defendant made use of insulated spark plug connectors. Kohloff's connector consisted of a strip of springy steel, and required no insulation.

In August of 1925, Kohloff was officially notified that his patent would be allowed upon payment of the final filing fees. In November of that year, he again wrote defendant saying, "I have received (sic) a patent upon my invention. * * * If you want to know more about my invention, I will be glad to hear from you."

The patent, numbered 1,566,143, issued upon December 15, 1925. Thirteen days later, the patentee wrote defendant, advising it of the issuance of the patent and,

with the communication enclosed a set of connectors, offering to sell the patent for a "reasonable" figure. Early in 1926, the Ford Company again wrote that it was not interested in the Kohloff devices.

Some time in 1927, Ford began the production of the model "A" cars. In connection therewith, a spark plug connector was designed in or about the month of July, 1927. It was designated as Part No. A–12275, and production and use of this device, which was made of springy metal, continued from December, 1927, until December, 1931. This part, however, underwent minor modifications, the most material revision being made about June, 1930. The design was then changed to permit the part to be made in a progressive die, with a resultant saving of material. In November 1931, Part No. A–12275 was lengthened by one-half an inch, and became designated as No. B–12275. This part was used in the production of the model "B" motors, which commenced in December, 1931. This one-half inch difference is the only change in parts No. A–12275 and No. B–12275.

On December 10, 1927, which was about the time that the original part No. A–12275 was being manufactured, Kohloff, through his then attorney, Zuckert, wrote to defendant, alleging infringement of his patent #1,566,143. This letter was answered by Ford's legal department on January 5, 1928, by a denial of infringement and an expression of hope "that this communication will summarily dispose of the question raised."

Nothing more appears to have happened until April 26, 1928, when Kohloff, through an attorney named Zingesser, communicated with the defendant. Making reference to the previous correspondence, Zingesser reiterated Zuckert's charge of infringement and added: "I would of course prefer to have this matter adjusted amicably, if possible, rather than compel my client to undergo the expense which he must necessarily bear in the event that he should be obliged to resort to suit. However, if I do not hear from you within two weeks, I shall assume that you are unwilling to compensate my client in any way, and shall advise him to take such steps as may be necessary to protect his interests."

This letter was acknowledged May 1st, 1928, and plaintiff was told of the differences between the patented device and the connector being employed by Ford, and was advised "to pursue any steps he may deem necessary to protect his interests."

On December 15, 1928, Kohloff applied for a patent upon another form of his electrical connector, and upon January 27, 1931, it eventuated in Patent No. 1,790,101. In March of 1939, Kohloff, along with George Gross, to whom he had assigned a one-half interest in the patents, began suit against defendant, charging its infringement of both patents. This, it will be noted, was about eleven years after Zingesser asserted that Patent No. 1,566,143 was being infringed.

Three days after plaintiffs filed their complaint, and before the same was answered, the pleading was amended so as to set up a claim for relief, based upon defendant's alleged wrongful appropriation of Kohloff's idea of a spark plug connector, and previously submitted to officials of the Ford Company. Subsequently, in May, 1939, and still before answer was filed, plaintiffs voluntarily withdrew the charges of infringement of the patents, and elected to stand upon the claim that defendant had wrongfully appropriated Kohloff's idea.

Some time thereafter, defendant, upon the pleadings, affidavits and exhibits, moved for summary judgment in its favor. This relief was granted. D.C., 37 F.Supp. 470, 46 U.S.Patent Quarterly 475.

Following this, plaintiffs sought leave to file a second amended complaint, reinstating the cause of action, founded upon the alleged infringements of patents Nos. 1,-566,143 and 1,790,101. On August 20, 1940, and upon conditions not now material, Judge Conger permitted this to be done. The second amended complaint was filed August 26, 1940.

Defendant then moved for a bill of particulars. It disclosed, inter alia, the following:

1. Plaintiffs no longer assert the claim of infringement of Patent No. 1,566,143;

2. Notice of plaintiffs' ownership of Patent No. 1,790,101, was given defendant either in June 1931 or March of 1932;

3. That plaintiffs first acquired knowledge of defendant's alleged infringements on or about January 9, 1933.

On October 1, 1940, defendant answered the second amended complaint. It not only denies the validity of Patent No. 1,790,101, and the infringement thereof, but sets up a counterclaim for a declaratory judgment to that effect. It is asked also that defendant

be adjudged to be within its rights in manufacturing and using its spark plug connectors without harassment, threats and molestation upon the part of plaintiffs. The claim sets up that plaintiffs knew of defendant's use of its connectors as early as December, 1927, and pleads laches, estoppel and the statute of limitations. Plaintiffs have denied generally the allegations of the counterclaim.

Under date of October 2, 1940, and pursuant to Civil Procedure Rule 56, defendant moved for summary judgment in its favor on the issues tendered by its counterclaim. Plaintiffs have made a cross motion for judgment in their favor, as respects the alleged infringement of Patent No. 1,790,101.

These motions are now before me for decision.

Defendant argues that, even assuming the validity of Patent No. 1,790,101, the proof now before the court demonstrates that the same has not been infringed. This is so plainly so, it is claimed, that a determination of the question of infringement should not await a trial, but now be resolved as a matter of law. Singer Manufacturing Company v. Cramer, 192 U.S. 265, 24 S.Ct. 291, 48 L.Ed. 437; Young v. Ralston-Purina Company, 8 Cir., 88 F.2d 97. See too Gatch Wire Goods Company v. W. A. Laidlaw Wire Company, 7 Cir., 108 F. 2d 433.

That the patent is exceedingly simple may be observed from the language of its one and only claim, which reads: "An electrical connector, comprising a single piece of relatively springy metal strip having cut-in ends forming jaws, and an eyelet rotatably mounted in one of the jaws, the said eyelet having a cut-out portion aligning with the cut-in in the strip in one position of the eyelet."

Plaintiffs take the position that, since for the purposes of the counterclaim, defendant concedes the validity of Patent No. 1,790,101, the only issue before the Court is that of infringement, and that, except on the question of damages, they should now have a decree in their favor.

In my judgment, a determination of the matter of infringement will decisively resolve this litigation.

Having examined the patent and its file wrapper, together with the drawings, the physical specimens, as well as prior art patents, cited in the answer, I am of the opinion that the conclusion I have reached would not be changed by a full hearing upon the merits. For that reason, I shall proceed to a decision.

The summary of the history of defendant's structure, heretofore recited, plainly reveals that the devices now under attack were in substantially the same form as those presently in use, and that they were designed, and in wide use a year before Kohloff applied for the patent in suit, and four years prior to issuance.

As has been seen from the claim of the patent quoted above, its elements are these: 1. A single piece of relatively springy strip, having 2. cut-in ends forming jaws, 3. an eyelet rotatably mounted in one of its jaws, 4. the said eyelet having a cut out portion aligning with the cut-in in the strip in one position of the eyelet.

Defendant's device is undoubtedly an electrical connector made of a single piece of a relatively springy strip, and at one of its ends there is a cut out portion which forms jaws. At the other end, there is an aperture consisting of a round hole designed to encircle a binding post. But, at the extremity of this end, there is no cut-in portion, forming jaws, such as is present in plaintiffs' device. Nor is the round hole in defendant's structure equipped with an eyelet rotatably mounted in one of the jaws. Furthermore, in terms at least, there is an absence of an eyelet having a cut out portion aligning with the cut-in in the strip in one position of the eyelet.

But, say plaintiffs, defendant has merely united several of the elements of plaintiffs' claim in such manner as to allow the accused device to perform the same function served by plaintiffs' structure, and that defendants' connectors should be regarded as the mechanical equivalent of the patented device.

It may be assumed that infringement of a patented structure cannot be avoided merely because an article alleged to infringe upon its claims is capable of performing only a part of the duty performed by the corresponding element of the patented combination. But, as I look at the situation here present, the matter of form plays rather an important part. Flexible metallic connectors have long been known in the electrical art and the methods by which their respective ends can be fastened to termini are various. The use of a rounded aperture within a metal strap or connector for use in fastening the same to

a post or projecting portion of a mechanical device is classic. And, in my opinion, whatever may be the function served by the aperture in the accused structure, and even though it be the functional equivalent of Kohloff's device, his patent does not prevent defendant from utilizing a means of fastening that has been in the public domain for years. The file wrapper of Patent No. 1,790,101 clearly indicates the narrow range of the invention. Claims 2, 3 and 4 of the patent application which, had they been allowed, would have substantially described defendant's structures. Each of them was rejected, and the patentee acquiesced in the rejection. The claims cannot be revived by placing a construction upon the one allowed that is wholly inconsistent with its language. Computing Scale Company of America v. Automatic Scale Company, 204 U.S. 609, 27 S.Ct. 307, 51 L. Ed. 645. My conclusion is, and it seems inescapable, that the accused devices do not infringe, and to such extent defendant's motion should be granted. Plaintiffs' cross motion will be denied, and their complaint dismissed.

No costs.