NATIONAL REGULATOR CO. v. POWERS REGULATOR CO.

(Circuit Court of Appeals, Seventh Circuit. February 7, 1908. Rehearing Denied May 6, 1908.)

No. 1,386.

1. PATENTS—INVENTION.

The coupling, without modification, of a motor that will run any kind of a machine to a machine that will run with any kind of a motor, is not patentable invention.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 27–29.]

2. SAME—HEATING AND VENTILATING APPARATUS.

The Powers patent, No. 558,610, for a heating and ventilating system wherein double dampers controlling separate ducts for hot and cold air are held in mixing position by a gradually acting thermostatically controlled motor, the purpose being to automatically regulate the temperature of the air discharged into a room through a single pipe, while for a new and useful combination, is void for lack of patentable invention, in view of the prior art, which disclosed the same motor and the same gradually acting damper, but not in combination.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

For opinion below, see 152 Fed. 984.

Appellant was adjudged to be an infringer of certain claims of patent No. 558,610, granted to Powers on April 21, 1896.

The specification thus describes the general nature of the invention:

"This invention relates to a heating and ventilating system for heating and ventilating apartments wherein the heating medium is warm air and the necessary amount of fresh air for ventilation is secured by mixing the appropriate quantity of air at normal temperature with the heated or warm air.

"The invention relates more particularly to the automatic control of the respective volumes of hot and cool air, so as to secure at all times the delivery of a uniform quantity of air into the apartment or apartments to

be heated and ventilated, while the proportions of the heated to the cool air are automatically regulated according to the temperature of the room itself.

"In carrying out my invention I make use of a gradually-acting pressure-thermostat which controls through a suitable valve or damper the hot and cold air passages. When two dampers are used, they are interconnected. and the movement of one by the action of the thermostat effects the movement of the other, so that while the relative proportions of the two currents of air may be varied the aggregate quantity delivered remains the same.

"My invention therefore consists, broadly, in a system of heating and ventilating by means of two currents of air at different temperatures automatically mixed, so as to maintain a uniform temperature in the apartment into which they are delivered, this delivery of the mixed air being made through a single pipe."

Claims 1, 2 and 3 are involved:

"1. In an air-heating and ventilating system, separate ducts for currents of air at different temperatures, in combination with means for controlling the flow of the air-currents and a gradually-acting thermostatically-governed motor for controlling said means and operating to vary the position of the controlling means according to changes of temperature, substantially as described.

"2. In an air-heating and ventilating system, separate ducts for currents of air at different temperatures, in combination with means for forcing the air, means for heating the current of air passing through one of the ducts, means for controlling the flow of the air-currents, and a gradually-acting thermostatically-governed motor for controlling said means, the construction of said duct-controlling means being such as to close one of the ducts in proportion to the extent to which the other is opened, whereby the air is directed proportionally through each of said ducts according to the variations of temperature in the apartment to be controlled, substantially as described.

"3. In an air-heating and ventilating system, separate ducts for currents of air at different temperatures in combination with valves or dampers for controlling the ducts, a pneumatically-operated pressure device for controlling the valves or dampers and operating against a gradually-increasing resistance and a thermostat for maintaining the air-pressure proportionally to the temperature of the apartment to be controlled, substantially as described."

W. Clyde Jones, for appellant.

Charles C. Linthicum, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). Reference patents prove that every element of the claims in suit was old. But in combining those elements Powers did something that was new and useful. The inquiry respects invention.

Without any aid from Powers a system of supplying heat and fresh air to school and other assembly rooms had been developed. Cold air from outside was conducted into the basement, and was forced along by a blower. One portion of the air passed over steam coils, and was highly heated. After the chill was taken from the remainder, the two currents in separate ducts were brought together in a trunk at the base of a single delivery pipe. A double damper was placed where the separate ducts united at the base of the single pipe. By means of a chain extending to the room to be heated by the single pipe the double damper could be manipulated. To the extent that one duct was closed the other was opened. This apparatus, minus the chain, is what is indicated in one of the two subcombinations of each of the claims in suit. Claim 1:

"In an air-heating and ventilating system, separate ducts for currents of air at different temperatures in combination with means for controlling the flow of the air currents."

Claim 2:

"Separate ducts (as in claim 1) in combination with means for forcing the air, means for heating the current of air passing through one of the ducts and means for controlling the flow of the air currents."

Claim 3:

"Separate ducts (as in claim 1) in combination with valves or dampers for controlling the ducts."

The other subcombination of each claim relates to an apparatus that obviates the chain and automatically moves the double damper in response to variations of temperature in the room. Claims 1 and 2:

"A gradually-acting thermostatically-governed motor."

Claim 3:

"A pneumatically-operated pressure device operating against a gradually-increasing resistance, and a thermostat."

Long before the patent in suit was applied for, electric regulators were used in residences. The thermostat's movement in response to variations of temperature in the room to be heated would close a circuit that operated an electric motor located in the basement. The motor was connected with the draft and check dampers of the furnace. The action was rapid, and completely closed one damper while it opened the other.

In 1889 (patent No. 416,947) Powers devised a pneumatic regulator. Commercially he employed it to control the draft and check dampers of residence furnaces. The thermostat's movement compressed a column of air within a pipe that led to the basement. The compressed air operated a motor that was connected with the draft and check dampers. The motor encountered an increasing resistance, such as is offered by a spring. The result was that the dampers were not rapidly and completely opened and closed, but were held in a balanced relation, gradually responsive to variations of temperature. This Powers regulator was "a gradually-acting thermostatically-governed motor," "a pneumatically-operated pressure device operating against a gradually-increasing resistance, and a thermostat."

To the prior art also belongs the application of the electric regulator to the double damper of the above-mentioned apparatus for heating schoolrooms. Of course the regulator operated in accordance with the law of its being. It rapidly and completely opened and closed the hot and cold air dampers just as it had the draft and check dampers. By its automatism it was better than the old manual control, but it was worse in that it gave alternate blasts of hot and cold air.

In putting his pneumatic regulator in the place of the electric regulator, Powers did a new thing. He was the first to make the connection. He also did a useful thing. His combination, while retaining the benefits of automatism, restored the advantage of manual control, namely, the mixing of the two currents of air as they reached the single delivery pipe.

Mindful of the fact that simplicity is often the highest mark of genius, of our duty to view the question as of the time preceding the disclosure of the patent, and of our grave responsibility in overturning a grant that presumptively is valid, we have been unable to escape the conclusion that the claims in suit are void. The work, and all the work, that Powers did in making the adaptation was to increase the size, in order to increase the power, of the thermostat that he had been using in residences, and to devise a form of double damper that would work more easily than the double damper that was then being operated by the electric regulator. This work may have required the exercise of the inventive faculty. We do not inquire, because appellant moves the old double damper by a kind of gradually-acting thermostatically-governed pneumatic motor that gets its power, not from the thermostat, but from an independent source, and further, because the claims in suit clearly assert a monopoly in the combination of any sort of double damper with any sort of gradually-acting thermostatically-governed motor. So the case, in our judgment, comes to this: Can a monopoly be properly granted for coupling without modification a motor that will run any kind of machine, to a machine that will run with any kind of motor? The answer to the question thus stated is found in Blake v. San Francisco, 113 U. S. 682, 5 Sup. Ct. 692, 28 L. Ed. 1070; Royer v. Roth, 132 U. S. 201, 10 Sup. Ct. 58, 33 L. Ed. 322, and numerous other cases.

The result was a distinct step in advance. But it was the inevitable result of attaching to each other the unchanged appliances. To have obtained a different result would have required a reorganization that might have taxed the genius of the inventor.

We cannot put the claims in the so-called "happy thought" class. If in truth a burst of inspiration points to the running of A.'s machine with B.'s engine, nevertheless a monopoly cannot be based merely on bringing the two together.

Lapse of time before gradually-acting thermostats were applied to the control of double dampers in hot and cold air pipes is claimed to be evidence of invention. In McMillin's Case, 112 U. S. 244, 5 Sup. Ct. 218, 28 L. Ed. 702, he was the first to apply the then century old steam engine to the exceedingly ancient capstan.

The decree is reversed, with the direction to dismiss the bill for want of equity.