## DALTON ADDING MACH. CO. et al. v. ROCKFORD MILLING MACH. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. April 27, 1920.)

No. 2689.

1. **Patents ⬤⟿177—Novel combination of invention of others is limited to particular form of adaptation shown.**

One who selects and combines elements from the inventions of others into a new structure, adapted to accomplish the old results, is entitled to a patent only for his particular form of adaptation, and there is room for such an adapter to have only a specific patent for his particular form of adaptation, and he is not privileged to exclude others from gleaning in the same general field.

2. **Patents ⬤⟿20—Doctrine of "reversal" stated.**

The doctrine of reversal can properly be applied only when the reversal can be made without change of parts or functions of parts, and if the claimed reversal involves the addition or subtraction or modification of parts, or if the movements essential to one of the machines be required to give way to different movements of the other machine, there is no reversal of movement.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reversal.]

3. **Patents ⬤⟿177—Use of prior device does not give patentee exclusive right thereto.**

That an inventor embodied the concept of a prior inventor in his reorganization of an old machine does not entitle the subsequent inventor to that degree of dominion in the art which the prior inventor might have exercised.

4. **Patents ⬤⟿328—1,039,130, writing and adding machine patent, held not infringed.**

The Hopkins patent, No. 1,039,130, for an adding and writing machine, *held* not infringed by a machine made under the Sundstrand patent, No. 1,198,487.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Arthur L. Sanborn, Judge.

Suit by the Dalton Adding Machine Company and the Addograph Manufacturing Company against the Rockford Milling Machine Company and others. From a decree for defendants (253 Fed. 187), plaintiffs appeal. Affirmed.

Thomas A. Banning and Samuel Banning, both of Chicago, Ill., for appellants.

Luther L. Miller, George L. Chindahl, W. Clyde Jones, and Lincoln B. Smith, all of Chicago, Ill., for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge. Appellants, owners of patent No. 1,039,-130, which was issued on September 24, 1912, to Hopkins, for a combined writing and adding machine, sought unsuccessfully in the trial court to suppress an adding machine made by appellees under the Sundstrand patent, No. 1,198,487, September 19, 1916.

Claims to the number of 284 are contained in the Hopkins patent.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Of these 44 were insisted upon at the trial and are here under the assignments of error. Following the oral argument, an extended consideration of 1,983 pages of record and 528 pages of briefs, and examinations of numerous physical exhibits, have finally led to the view that all the issues in the case are to be disposed of by stating and answering one question.

Burroughs was the founder of the adding machine art. His machine comprises, broadly, a setting-up mechanism, by which the operator positions stops to determine the numbers that are to be recorded and added; a printing mechanism, by which the selected numbers are recorded on paper; an adding mechanism, by which the totals are accumulated; and an operating mechanism, that sets in motion the various parts through which the addition is recorded.

As we are not herein concerned with the adding and operating mechanisms, we note that the Burroughs setting-up and printing mechanisms employ the following five elements, viewed broadly: A keyboard; a field of stops; a printing device; connections between the keys of the keyboard and the field of stops; and connections between the field of stops and the printing device.

The Burroughs keyboard contains nine rows, of nine keys in each. The bottom row is made up of 1's the next of 2's and so on. In the other direction, beginning at the right hand, the rows represent the ordinal values of the numerals. (Separate provision is made for printing ciphers without the use of a key.) In the field of stops, the frame of which is stationary, there are nine rows of nine stops. When the operator depresses a numeral key, a stop of corresponding cardinal and ordinal value is set up in the field of stops by means of the interposed connections. When the stops representing the selected number have been set up, the operator moves a lever, which through its connections brings the type carriers into the positions determined by the set-up stops, and then a farther movement of the lever causes the printing to be done. The Burroughs printing mechanism consists of a platen, movable type, and hammers to strike the type; the paper being interposed between the type and the platen.

Prior to Hopkins many detailed improvements upon the Burroughs machine had been made. But no invention of a primary character appeared until the issuance of the Helmick patent, No. 630,053, August 1, 1899. Helmick's invention of the 10-key adding machine could not found a new art, but it exhibited a radically new start at a vital point in the older machines. No one has been able to get away from the field of 81 stops. That has remained as an essential means of placing the type in printing position. Burroughs used 81 keys and 81 connections to control the 81 stops. Helmick found that he could control the 81 stops with 10 keys and 10 connections. The 10 keys represent the cardinal values of the numerals; ordinal values are obtained by giving to the field of stops a step-by-step movement. When a key is depressed, the corresponding stop in the foremost row is set up, and at the same time, by means of an escapement mechanism, the field of stops is moved to a new position, in which the row of stops containing the stop set up by the depression of the key is in line with the right-hand type

carrier, and the second row of stops is brought into operative relation with the keys. Successive operations of the keys result in repetitions of this movement, until the selected number has been set up in the traveling field of stops, when, by the operation of the lever, the type carriers are moved to the positions permitted by the stops, as in the Burroughs machine, and then the printing follows. In his printing mechanism Helmick did not employ the Burroughs platen, but interposed the paper between the hammers and the type.

Hopkins not only knew of the Burroughs and Helmick adding machines; he was also acquainted with typewriting machines. In his patent for a combined adding and writing machine, many claims, presumptively valid, are devoted to the combined operations. Claims relating to the setting-up and printing mechanisms of an adding machine are divided by appellants into four groups.

The first group, 20 some in number, covers all of the specific features which Hopkins developed in bringing together the foundational inventions of Burroughs and Helmick. We assume that they are sufficient in number and scope to afford appellants ample protection against the unauthorized use of any of those specific features or their fair equivalents. And we accept appellants' concession that the machine of appellee does not infringe any of these claims.

The second group, 20 in number, comprises various combinations of setting-up and printing mechanisms, in which the traveling field of stops is called a carriage, and is characterized by one of its functions. Claim 141, which is typical of this group, is as follows:

"The combination with,

"1. A series of type carriers;

"2. Hammers co-operating with the type on said type carriers to record;

"3. Means for causing said hammers to operate incidentally to the operation of the corresponding type carriers;

"Each hammer remaining idle when the corresponding type carrier is idle; and

"4. A carriage operable to select the number of type carriers which may be operated; of

"5. A paper carriage arranged to feed a sheet of paper to said type carriers; and

"6. Means for holding said carriage in different lateral adjustments to present different, columns of paper to said type carriers."

Terms of broader scope can hardly be imagined. But none of the elements, so generically stated, was brought into being by Hopkins. Elements 1, 2, 3, 5, and 6 were old with Burroughs and his improvers, prior to Hopkins. Element 4 in every generic sense was the property of Helmick.

The third group, 13 in number, is similar to the second group, except that it characterizes the "carriage" by another function. Claim 31, which is typical of this group, is as follows:

"In an adding machine,

"1. Racks;

"2. Type carriers in connection with said racks;

"3. A carriage whose operation is necessary before said racks and type carriers may be operated;

"4. Mechanism for operating said type carriers and racks;

"5. Adding mechanism operated by said racks;

"6. Movable elements limiting backward movement of said racks;

"7. Trips operated by said adding mechanism for moving said movable elements effectively to release said racks; and

"8. Means for operating said racks effectively to transfer or carry from lower to higher orders in said adding mechanism."

If for the third element there be substituted the Burroughs means for setting up the stops in the field of stops, the entire combination is found in the Burroughs machine for the same purpose and effecting the same result. The "carriage" of the third element originated with Helmick.

In the fourth group, 11 in number, no "carriage" element is directly named. Claim 184, which is typical of this group, is as follows:

"A recording mechanism comprising,

"1. A revoluble platen arranged to hold paper;

"2. A series of type carriers;

"3. A key;

"4. Mechanism operable to move the type carriers toward the platen;

"5. A series of parts equal in number to, the number of type carriers arranged to be moved at a time when said key is successively operated;

"6. Means whereby a number of type carriers equal to the number of said parts so moved will be stopped side by side adjacent to the platen when said type carriers are moved;

"7. Automatic means to record on the platen after said type carriers stop; and

"8. Automatic means to rotate said platen to feed paper in line spacing."

In his struggle to get broader and broader claims, the applicant has here arrived at generalities from which it is difficult to extract his meaning. So far as this record informs us, the setting-up and printing mechanisms of an adding machine cannot exist without a field of stops. In the Hopkins machine the traveling field of stops is the "carriage" element. The claim might be held void for nebulosity. If the sixth element does not bring in the "carriage" as the indispensable field of stops, then the claim, even though it be taken as merely a subcombination in the setting-up and printing mechanisms, is void for inoperativeness. If the "carriage" is brought in, then the question is the same as that presented by the other groups of claims.

It is now necessary to see what the appellants by this suit are endeavoring to suppress. In producing the setting-up and printing mechanisms, with which alone we are here concerned, Sundstrand, of course, utilized the necessary five broad elements: Keyboard; field of stops; printing device; connections between the keys and the field of stops; and connections between the field of stops and the printing device. He took the Burroughs printing device and the Burroughs stationary field of stops. He took the Helmick keyboard of 10 keys. But when it came to bringing the keys, the stops, and the printing device into operative relationships, Sundstrand devised specific means which we find nowhere in the prior art. In all prior machines there was a direct and laterally immovable series of connecting links between the keys and the field of stops, and also a direct and laterally immovable series of connecting links between the respective rows of stops and the printing device. But in the Sundstrand machine there is in each

instance a series of connecting links which are fixed with relation to the keys and the type bars, but are laterally movable with relation to the field of stops. For use with the Burroughs stationary field of 81 stops and the Helmick stationary board of 10 keys, Sundstrand devised a swinging frame, containing a series of 9 push pins or fingers, which are adapted to be actuated by corresponding keys. In their initial position these fingers are in operative relationship with the first row of stops in the field of stops, and on the depression of a key the corresponding stop in that row is set up. Then, by means of a toothed ratchet bar, the fingers swing so as to bring their ends opposite the second row of stops, and so on. When stops representing the selected number have been set up, movement of the operating lever carries the type to the required positions and the printing is done.

The question is: Did Hopkins make and disclose an invention which in substance is broad enough to support the claims which in words cover the Sundstrand machine?

Burroughs achieved a new result by new means. His thought was the foundation of a new art.

Helmick achieved an old result, but by different means in part. His thought was the foundation of the 10-key branch of the adding machine art. In connection with the Burroughs adding mechanism and a non-Burroughs printing device, he utilized his new keyboard by changing the indispensable Burroughs field of 81 stops from stationary to movable.

Hopkins achieved an old result by means which were generically old. He availed himself of the Burroughs patents. He took the Helmick 10-key invention. He followed Helmick in utilizing the new keyboard by changing the Burroughs field of stops from stationary to movable. But, ceasing to follow Helmick, he reverted to the Burroughs type of printing device. In thus combining Burroughs and Helmick, he introduced into the setting-up and printing mechanisms many specific changes, some of them probably necessitated by his bringing typewriting mechanism into the organization; but, so far as the adding machine art alone is concerned, the results were all old, the fundamental concepts were all old, and the means considered generically were all old.

Sundstrand achieved an old result by means which were generically old. He took, we may say for the purposes of this case, the whole of his machine, including the stationary field of stops, from Burroughs, except the keyboard which he took from Helmick, and except the new connections between keys, stops, and type bars, which he created. The swinging fingers and their mode of operation were specifically new; they were generically old only in the sense that between the swinging fingers and the stationary stops there was relativity of movement, and relativity of movement generically had been devised by Helmick. For Sundstrand's specifically new concept we find no anticipatory suggestion in Burroughs or Helmick or Hopkins.

[1] Hopkins showed one way of combining and improving upon Burroughs and Helmick; Sundstrand found another way, which depends upon no thought or teaching of Hopkins. One who selects and combines elements from the inventions of others into a new structure

adapted to accomplish the old results is entitled to a patent only for his own particular form of adaptation. There is room for such an adapter to have only a specific patent for his particular form of adaptation and he is not privileged to exclude others from gleaning in the same general field. Milwaukee Carving Co. v. Brunswick-Balke-Collender Co., 126 Fed. 171, 61 C. C. A. 175; Loew Supply & Mfg. Co. v. Fred Miller Brewing Co., 138 Fed. 886, 71 C. C. A. 266; National Regulator Co. v. Powers Regulator Co., 160 Fed. 460, 87 C. C. A. 444.

[2] Appellants' whole insistence upon a right to escape from the rule above cited is centered in the oft-repeated assertion that to change from the Hopkins movable to the Sundstrand stationary field of stops involved merely a reversal of movement of the same parts in the two machines. The doctrine of reversal can properly be applied only when the reversal can be made without change of parts or the functions of parts. If the reversal involves the addition or subtraction or modification of parts, or if any of the movements essential to one of the machines be required to give way to different movements of the other machine, it is obviously not a mere reversal of movement that has resulted. To effect a reversal of movement in the Hopkins machine, it would be necessary to hold the field of stops stationary and to move the racks and type carriers on the one hand and the keyboard on the other. Sundstrand did not do this. He held the racks and type carriers and also the keyboard stationary, and, in order to have them properly cooperate with the stationary field of stops, he devised the novel connecting means hereinbefore described. So we find that Sundstrand did not merely reverse the movements of the same or corresponding parts in Hopkins.

[3, 4] But there is a worse vice in the contention than its lack of basis in fact. That vice inheres in the claim of Hopkins that, because he embodied the Helmick concept in his reorganization of the Burroughs machine, he is entitled to that degree of dominion in the art which Helmick might have exercised. Compare Stromberg Motor Devices Co. v. Zenith Carburetor Co., 254 Fed. 68, at page 82, 165 C. C. A. 478, where the owner of the Richard patent for a carburetor, which employed a fundamental invention by Ahara, was endeavoring to suppress a rival carburetor which also embodied the Ahara concept.) We have hereinbefore granted that Sundstrand uses relativity of movement. But the answer to appellants is that dominance over relativity of movement was the right of Helmick and not of their assignor Hopkins.

Our conclusion is that appellants should not be permitted through the Hopkins patent to take the dead hands of Burroughs and Helmick with which to throttle the live offspring of Sundstrand's conception.

The decree is affirmed.