**BURROUGHS ADDING MACH. CO. v. ROCKFORD MILLING MACH. CO. et al.**

(Circuit Court of Appeals, Seventh Circuit. August 15, 1923.)

No. 3156.

1. **Patents ⬳328—1,336,904, for adding machine, held not infringed.**
   The Hopkins patent, No. 1,336,904, for adding machine, as to claims covering stop mechanism, *held* not infringed by the machine of the Sundstrand reissue patent No. 14,237 (original No. 1,198,487).

2. **Patents ⬳276—Construction of claims is matter of law, where prior art is not involved.**
   Where there is no dispute or doubt as to the prior art construction of the claims of a patent on a jury trial in an action at law for infringement is a matter of law for the court.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Patents ⊛278—Documents considered by trial court by stipulation may be considered by appellate court.**

> Where by stipulation of the parties certain patents not formally introduced in evidence, and also the record, in a prior suit between the parties were given to, and considered by, the court in determining a°motion for directed verdict, they may also be considered by the appellate court.

In Error to the District Court of the United States for the Western Division of the Northern District of Illinois.

Action at law by the Burroughs Adding Machine Company against the Rockford Milling Machine Company and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Edward Rector and Thomas A. Banning, both of Chicago, Ill., for plaintiff in error.

Chindahl, Parker & Carlson, W. Clyde Jones, and Lincoln B. Smith, all of Chicago, Ill., for defendants in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. The action was at law, begun by the predecessor of plaintiff in error for alleged infringement of certain claims of United States patent No. 1,336,904, to Hopkins, through the making by defendants in error of machines under later patent to Sundstrand, No. 1,198,487. At the close of plaintiff's testimony, on' motion of defendants, the court directed verdict in defendants' favor on the ground of noninfringement, and gave the judgment here in question.

Application for the Hopkins patent was filed April ·9, 1906, and patent issued April 30, 1920. The Sundstrand application was filed March 14, 1914, and patent thereon issued September 19, 1916, and reissue patent No. 14,237 granted December 26, 1916. All the devices are in the adding or calculating marchine art, that of Hopkins being for a combined calculating and writing machine.

The Hopkins patent presents the disturbing situation of its pendency in the Patent Office for over 14 years, and the allowance of the appalling number of 421 claims. These facts, while not influential in determining the issues here, suggest the dire need of change in our patent law or practices, or both.

[1] This controversy has to do only with the "setting-up" mechanism of the adding or calculating machine—the mechanism whereby certain stops are positioned for arresting the moving type-carrying bars in proper place for printing the desired. numerals. The Sundstrand applications were filed and granted during the pendency of the Hopkins application, and Hopkins, contending he was entitled to certain of the Sundstrand claims, in 1918 adopted, and on hearing of interference was allowed, claims 12 and 14 of the Sundstrand reissue patent, as Hopkins' claims 419 and 420, which are as follows:

> "419. In a stop mechanism for. adding machines, a stationary group of stops, a plurality of push pins, means for moving the field of push pins into position adjacent the various stops, and means for projecting said push pins against the stops.
> "420. In a stop mechanism for adding machines, a stationary group of stops, a movable support, a plurality of stop-setting members carried by said

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

support, means for moving said support to carry said members into and out of operative relation to the various stops, and means for actuating said stop-setting members."

These are typical of the six claims sued upon; the other four, 181, 182, 211, and 214, being somewhat more limited. On determination in Hopkins' favor of the interference, Sundstrand disclaimed his reissue claims 12 and 14.

A prior patent to Hopkins, No. 1,039,130, September 24, 1912, on application filed January 24, 1903, for a combined writing and adding machine, was the subject-matter of an earlier controversy in the same District Court, wherein infringement of the setting-up mechanism of the first Hopkins patent was charged through the same Sundstrand setting-up mechanism as here in issue. The court found noninfringement, and entered decree accordingly, which this court affirmed. Dalton Adding Machine Co. v. Rockford Milling Mach. Co., 267 Fed. 422.

The very broad claims there in issue, sufficiently inclusive to cover the Sundstrand machine, were held, in the light of the prior Burroughs patents and the Helmick patent, to be limited to the mechanism which Hopkins showed, and not to cover the Sundstrand setting-up device. The Hopkins patent of this suit had not been issued at the time of the disposition of the other case, and of course was not before the court.

The question here is upon the infringement of the second Hopkins patent, and not the first. But the query presents itself: What is there in the setting-up mechanism of Hopkins' second patent which requires here a conclusion different from that reached in the action upon his first? Here, as there, Burroughs is the pioneer in the use of a stationary field of stops, actuated by 81 keys, and Helmick broadly the inventor of the movable field of stops actuated by 10 keys. Hopkins' first patent (which is here prior art) shows also the movable field of stops in a 10-key machine. For more detailed description and comparison of setting-up mechanism of these respective devices, our opinion in the Dalton Case is referred to.

Hopkins' second patent shows a complete rearrangement of his stop mechanism, but when carefully examined does not really present a very wide departure from what he showed in his first, where each key, when depressed, elevated a stop in the field and caused the carriage to move one step, presenting the next order of stops for action by the next depression of a key, and so on, and after printing the number the entire field to be returned to original position with all stops back to normal. In his second Hopkins has in effect split his field of stops into two fields, one over the other, the upper stationary and carrying the stop pins, and the lower a field of corresponding pins in a carriage slidingly mounted on a frame. The depression of the keys, instead of raising the stop pins themselves, raises pins in the lower field, and moves the lower field one order on each depression until the then elevated pins in the lower field are opposite corresponding stop pins of the upper field, whereupon the influence of the key depression is terminated, and the movement of the handle lifts a pivoted frame carrying the lower field of pins, sufficiently to cause the then elevated pins in the lower field to press against the corresponding stop pins of the upper field, causing these particular stop pins to rise above the normal face of

the upper field of stop pins and act as stops to the type-carrying bars which overlie them. The specification better states this feature in these words:

"From the foregoing description it will be seen that, when an example is introduced into the traveling carriage and the setting-up pins are elevated, the said traveling carriage has progressed step by step under the stop pins 93, so that when the completed item is set up on the keyboard the traveling carriage with its setting-up pins occupies the proper relation with respect to the field of stop pins; that is, if the example was 123, the elevated setting-up pins will lie directly under the pins in the hundreds, tens, and units columns in the field of the stop pins. When the frame 58 is elevated, the setting-up pins will elevate corresponding stop pins 93 and position stops for the rack bars in exactly the relation to each other that the setting-up pins occupied. Thus, in the example 123, the stop pins 93 in the hundreds, tens, and units columns will be positioned so as to arrest the rack bars in such position that this sum will be printed and registered in the totalizer wheels."

Now, so far as the stop mechanism is concerned, if the lower movable field were extended upward, its pins, when elevated by the key compression, would serve as the stops, and do away, not only with the need of two fields of pins, but also with the mechanism for lifting the lower carriage and frame for elevating the stops in the upper field.

It is contended for plaintiff in error that this division into two members of the Helmick and first Hopkins movable field possesses the advantage of reducing the shock and strain present where there is but one such. On the other hand, it is claimed that the division, with the means for elevating the movable lower field, was but means adopted by Hopkins in his second patent to avoid his first, which had passed out of his control, and that beyond this it had no virtue and served no purpose.

We do not find it necessary to probe deeply into the merits or demerits of this divided stop carrier; but suffice it to say, in our judgment, the Sundstrand machine does not directly or indirectly have it. His stationary single field of stops is nothing more nor less than Burroughs, and his swinging gate with its nine fingers or push pins, as he calls them, which on depression of the key moves the proper finger directly against the pin or stop, setting it at once in a position for stopping the type-carrying bar, and swinging the gate one notch to the next order, all by the depression of the key and without the exertion of the handle or other mechanism, as in Hopkins' second, is so wholly unlike the two-field and frame-raising contrivance of the second Hopkins patent that mere inspection of the two must convince that Sundstrand is in no sense an adaptation of the other.

With a single movable field of pins, the setting-up mechanism of Hopkins' second would not patentably differ from his first; and, since Sundstrand does not have the two fields, his relation to second Hopkins is not different than it is toward Hopkins' first, and Sundstrand must be considered in the light of the same prior art as in the case of Hopkins' first, with the first additionally in the prior art. Conceding the claims in question, particularly 419 and 420, to be broad enough in their terms to include the Sundstrand mechanism, we are satisfied that here, as in the Dalton Case, in view of the prior art, the claims, if valid, must be limited to what Hopkins did and showed in his second

patent. So construed, we necessarily conclude that Sundstrand does not infringe the claims in issue.

[2] Plaintiff in error questions the right of the District Court to pass upon the proposition of infringement as a matter of law, maintaining this should have been submitted to the jury. The construction of the claims was primarily for the court. If the construction is dependent on the prior art, a doubtful or disputed question of fact respecting the prior art would be for the jury; but where there is no dispute or doubt respecting the prior art the court may, and indeed should, as a matter of law, construe the claims in view of the uncontroverted and plain prior art. Singer v. Cramer, 192 U. S. 265, 24 Sup. Ct. 291, 48 L. Ed. 437; Fond du Lac County v. May, 137 U. S. 395, 11 Sup. Ct. 98, 34 L. Ed. 714; Prepayment Car Sales Co. v. Orange County Traction Co., 214 Fed. 576, 131 C. C. A. 156; Western Electric Co. v. Robertson, 142 Fed. 471, 73 C. C. A. 587; De Loriea v. Whitney, 63 Fed. 611, 11 C. C. A. 355.

There is here not only no controversy as to what the prior art disclosed, but of it the brief of plaintiff in error says:

"The plaintiff freely concedes that prior to the invention of the Hopkins patent sued on there were adding machines of the 81-key type, in which there was a stationary field of 81 stops" (citing Burroughs' patents), and that there had been invented "adding machines of the true 10-key type, in which there was a laterally moving field of 81 stop pins, that traveled across the machine from order to order as the numeral keys were depressed, and thus arranged the stops in their proper numerical or denominational orders"— citing the Helmick and the first Hopkins patents "considered by this court in the case of Dalton Adding Mach. Co. v. Rockford Milling Mach. Co., 267 Fed. 422."

[3] Plaintiff in error persistently suggests, without, however, directly predicating thereon any contention of error, that the Helmick, Hopkins' first, and Burroughs patents were not in evidence, that they were not offered by plaintiff, and the motion for directed verdict was made immediately after plaintiff rested its case. Defendants in error insist that the District Court, in passing upon the motion for directed verdict, could take judicial notice of the record of that court in the former case involving the same Sundstrand patent, wherein there was the same defendant as here; also that this court may take notice of its record of that case; and there is cited in support of the position Dimmick v. Tompkins, 194 U. S. 540, 24 Sup. Ct. 780, 48 L. Ed. 1110, De Bearn v. Safe Deposit & Trust Co., 233 U. S. 24, 34 Sup. Ct. 584, 58 L. Ed. 833, Bresnahan v. Tripp, etc., Co., 72 Fed. 920, 19 C. C. A. 237, Cushman Paper-Box Co. v. Goddard, 95 Fed. 664, 37 C. C. A. 221, and other cases.

While parties may not in the appellate court stipulate a record other than that which was before the court below, nevertheless it does appear here by stipulation of the parties that these patents, together with the record of the Dalton Case, were handed to the District Court, upon the consideration by that court of the motion for directed verdict, and that the District Court predicated its conclusion in part upon them. It was not essential to the disposition of that motion that these items should have been formally introduced in evidence. They were before

the court, the court considered them, and the plaintiff there made no objection to their consideration, and no assignment of error is predicated thereon. Indeed, in the oral argument in this court, and in the briefs as well, counsel for plaintiff in error invited the court to consider these prior patents. On page 3 of their reply they say:

"We are glad to have these various prior patents now specifically brought to the attention of this court. as they will thus supplement the record and give this court ground for passing upon all of the prior art, on which the defendants rely in their effort to defeat or restrict the claims of the Hopkins patent in suit. We trust they will all receive the careful consideration of this court, so that, if a new trial be ordered, the court below will have the benefit of an authoritative rule on the entire state of the art as relied on by the defendants, and thus probably prevent the necessity of a second consideration of .this controversy. so far as these patents are conserned. We are reluctant to have the case considered merely on technical points, but are anxious for the merits of the controversy to be considered, and the Hopkins patent sued on construed in the light of the full prior art, for the guidance of the court below in case of a reversal."

Parties cannot at the same time "blow hot and blow cold." If these prior art patents are here for any purpose, they are here for all purposes, whether of affirmance, or of direction to the District Court in case of a reversal. Under all the circumstances, we consider them as having been before the District Court upon its consideration of the motion for directed verdict.

Finding, as we do, that the District Court correctly concluded as a matter of law that infringement did not appear, the judgment is affirmed.