## EDWARD G. BUDD MFG. CO. v. C. R. WILSON BODY CO. et al.

(District Court, E. D. Michigan, S. D. August 1, 1925.)

No. 359.

1. **Equity ⬮409—Master's report on matters of law held not conclusive on District Court.**

In suit for unfair competition and infringement of trade-marks and patents, master's report on questions of validity of patents and infringement, and whether, in view of finding that plaintiff did not have trade-mark rights in the words "All-Steel," defendant could be restrained from use of such words in describing its products, involved matters of law, and not questions of fact, and hence was not conclusive on the District Court.

2. **Equity ⬮409—Every reasonable presumption that findings of fact by master are correct.**

Even if reference is not by consent, there is every reasonable presumption that findings of fact by the master are correct, and when reference is by consent of the parties, while his findings of fact are not absolutely conclusive, they are attended by strong presumption of correctness.

3. **Equity ⬮409—Any conclusiveness as to master's finding of fact does not extend to findings of law.**

Any conclusiveness as to master's finding of fact does not extend to findings of law.

4. **Equity ⬮410(6) — Questions of infringement, depending on scope and validity of claims, held questions of law for court, as respects review of master's findings.**

Questions of infringement of patents, depending on scope and validity of claims, involved questions of law for the court, and not questions of fact, as respects scope of review of master's findings.

5. **Equity ⬮410(6)—Defendant's right to use words "All-Steel" held to present question of law for court, on exceptions to master's report.**

In suit charging infringement of trade-mark "All-Steel" in manufacture of automobile bodies, defendant's right to use the words "All-Steel" presented question of law for the court, on exceptions to master's report.

6. **Equity ⬮409—Master's conclusions, while not binding on the court, are entitled to careful consideration.**

While master's report on questions of law is not binding on the court, his conclusions are entitled to careful consideration.

7. **Trade-marks and trade-names and unfair competition** ⊜71—**Automobile body manufacturer held entitled to restrain defendant from using phrase "All-Steel" on its automobile bodies and advertising.**

Automobile body manufacturer *held* entitled to restrain defendant, guilty of unfair competition, from using catch phrase "All-Steel" on its automobile bodies and in its advertising, though such phrase had not acquired a secondary meaning, and plaintiff had no property rights therein.

8. **Patents** ⊜328—**Ledwinka patent, 1,143,635, for automobile body, claims 3, 9, 10, 14, 19, 22, 23–31, inclusive, 38 and 39, held invalid.**

Ledwinka patent, No. 1,143,635, claims 3, 9, 10, 14, 19, 22, 23–31, inclusive, 38, and 39, for automobile body with skeleton frame and shell or sheathing, *held* invalid, in view of prior art.

9. **Patents** ⊜328—**Ledwinka patent, 1,275,274, claims 1 and 2, for automobile body, not infringed, and claims 11 and 12 invalid in view of prior art.**

Ledwinka patent, No. 1,275,274, claims 1 and 2, for automobile body, reinforced with box girder, *held* not infringed, and claims 11 and 12, for particular formation of a door sill, *held* invalid, in view of the prior art.

10. **Patents** ⊜328—**Ledwinka patent, 1,255,-323, for removable upholstery for vehicles, held not infringed.**

Ledwinka patent No. 1,255,323, for removable upholstery for vehicles, *held* not infringed, in view of prior art.

11. **Patents** ⊜328—**Ledwinka patent, 1,214,-932, claim 4, for support for a vehicle top iron, held invalid, in view of prior art.**

Ledwinka patent, No. 1,214,932, claim 4, for support for a vehicle top iron, *held* invalid, in view of the prior art.

In Equity. Suit by the Edward G. Budd Manufacturing Company against the C. R. Wilson Body Company and another. On defendants' exceptions to the master's report. Report modified, and preliminary injunction against defendants modified, in accordance with opinion.

Alexis C. Angell, of Detroit, Mich., Melville Church, of Washington, D. C., and Samuel E. Darby, of New York City, for plaintiff.

William J. Belknap and Paul W. Voorhies, both of Detroit, Mich., for defendant C. R. Wilson Body Co.

TUTTLE, District Judge. The bill of complaint herein charges unfair competition, infringement of a trade-mark "All-Steel" and infringement of four patents. At the time the bill of complaint was filed, plaintiff also filed a motion for a preliminary injunction, and in view of the nature of the un-

fair competition a preliminary injunction was granted on the patents and trade-mark, as well as under the unfair competition charges, for, although the patents and trade-mark questions were not given consideration by me on the preliminary hearing, I felt that, in view of the circumstances surrounding this case, matters should be maintained in statu quo as nearly as possible until the final hearing. After the preliminary motion was disposed of, the case was referred to the master. The master found that the defendant had been guilty of unfair competition, and that all claims in suit of the four patents were valid and infringed. He also found that the words "All-Steel" had not acquired a secondary meaning, and that plaintiff was not entitled to trade-mark rights therein, but that in view of the defendant's wrongful acts the defendants should be enjoined from the use of such words in connection with its products.

Defendant filed exceptions to the master's report. No exceptions were filed by the plaintiff. After defendant's exceptions were filed, and shortly before this hearing, the plaintiff filed a motion for an order confirming the report of the master. This motion was heard at the time of the hearing on the exceptions. Plaintiff urged that, since the order referring the case to the master was consented to by both parties, the findings of fact of the master were conclusive upon this court, and that, as the master's conclusions of law follow his findings of fact, any other conclusions of law are precluded.

It has never been my intention, in referring cases involving patents to the master, to deprive the parties of their right to have me review the master's findings. It was not my intention, in referring this one to the master, to in effect substitute the master for this court, and I do not understand that even plaintiff contends that such was the intention of the parties, but it relies upon the wording of the order on which the reference was made. Although I do not believe that the mere wording of the order, in the absence of the intention of the parties, should have an effect not intended by the parties or by the court, it is unnecessary to pass upon that phase of the situation, for the questions which I am called upon to review are only those questions which under the authorities, even in case of a consent order, I have the right to and should review.

[1] Defendant at the hearing notified the court that it would not press its exceptions to the master's findings relating to the un-

fair competition branch of the case. This left remaining for the court's consideration on exceptions only three questions, viz.: (1) The question of validity of the patents; (2) whether defendant's structure infringed; and (3) whether, in view of the finding that the plaintiff did not have trade-mark rights in the words "All-Steel" (which finding was not excepted to by the plaintiff), under the law the defendant could be restrained from the use of these words in describing its products. As these three questions are matters of law, not questions of fact, the master's report is not conclusive upon this court.

The order of reference is as follows:

"By consent of the plaintiff and the defendant C. R. Wilson Body Company, this cause is referred to William S. Sayres, Jr., standing master in chancery, at Detroit, Michigan, for the purpose of the taking of testimony therein on all issues and on behalf of both plaintiff and the said defendant; the master to report the testimony in full to the court, together with his findings of fact and law.

"It is further ordered that the depositions heretofore taken on behalf of plaintiff shall be considered as having been taken before the master, and the motion brought by the defendant C. R. Wilson Body Company, in connection with the deposition of plaintiff's witness, Willis B. Wilcox, is hereby referred to the master for an advisory opinion to the court.

"It is further ordered that the costs of the proceedings before the master, including any expenses of the master sitting in this cause outside of Detroit, shall initially be borne equally by the parties, and such expense shall finally be taxed as costs, as the court shall deem just."

[2] Even if the reference is not by consent, there is every reasonable presumption that the findings of fact by the master are correct. When the reference is by consent of the parties, while his findings of fact are not absolutely conclusive, they are attended by strong presumption of correctness. Davis v. Schwartz, 155 U. S. 631, 15 S. Ct. 237, 39 L. Ed. 289–293.

[3] Any conclusiveness as to the master's findings of fact do not extend to findings of law. United States Trust Co. v. Mercantile Trust Co., 88 F. 140–153, 31 C. C. A. 427 (C. C. A. 9); Hattiesburg Lumber Co. v. Herrick, 212 F. 834–842, 129 C. C. A. 288 (C. C. A. 5); Boisot v. Amarillo Ry., 244 F. 838–841 (D. C. Texas).

[4] No dispute arose at the hearing be-fore me as to what is contained in the prior art. It is only the legal effect of the prior art upon the scope and validity of the patents that is in question. Plaintiff relies upon a certain automobile body made by the defendant in its proof of infringement. The construction of this body and the fact that it was made by the defendant are not in dispute. The questions of infringement, therefore, depend upon the scope and validity of the claims. These are questions of law for the court, not questions of fact. Brothers v. Lidgewood Mfg. Co., 223 F. 359, 138 C. C. A. 460 (C. C. A. 2); Walker on Patents (5th Ed.) p. 259; Singer Mfg. Co. v. Cramer, 192 U. S. 265, 24 S. Ct. 291, 48 L. Ed. 437; Fond du Lac County v. May, 137 U. S. 395, 11 S. Ct. 98, 34 L. Ed. 714; Prepayment Car Sales Co. v. Orange County Traction Co., 214 F. 576, 131 C. C. A. 156; Western Electric Co. v. Robertson, 142 F. 471, 73 C. C. A. 587; De Loriea v. Whitney, 63 F. 611, 11 C. C. A. 355; Burroughs Adding Machine Co. v. Rockford Milling Machine Co. (C. C. A.) 292 F. 550–554 (C. C. A. 7); Heald v. Rice, 104 U. S. 737, 26 L. Ed. 910; Market Street Cable R. Co. v. Rowley, 155 U. S. 621, 625, 15 S. Ct. 224, 39 L. Ed. 284, 287; Hurin v. Electric Vacuum Cleaner Co., 298 F. 76–79 (C. C. A. 6).

[5] The defendant's right to use the words "All-Steel" also presents a question of law for the court.

[6] Therefore, on the questions which I have to consider, the master's report is not binding upon me, although, of course, his conclusions are entitled to careful consideration. I also find that the defendant's exceptions are sufficiently definite in form for the matters which I am called upon to review.

[7] The master found that the words "All-Steel" had not acquired a secondary meaning, in addition to any other than their ordinary descriptive meaning, and that the plaintiff is not entitled to the exclusive use of such words as a trade-mark or trade-name, but he reached the conclusion that to leave the defendant free to use such words to indicate automobile bodies would not afford plaintiff the full measure of relief which he considered the plaintiff to be entitled to. It is the defendant's position that, since the words "All-Steel" have not acquired a secondary meaning, the plaintiff has no property rights in these words upon which a remedy can be based. I do not so understand the law. To leave the defendant in position to use the words "All-Steel" upon its goods

or in its advertising might do a great injustice to the plaintiff, in view of the wrongful acts which the defendant has committed, and, while the defendant may be entitled to describe its automobile bodies to its customers as bodies made of all steel, the defendant should be restrained from using this catch phrase "All-Steel" on its bodies and also in its advertising, and I so hold.

The four patents in suit and the claims thereof relied upon are as follows:

1,143,635, J. Ledwinka, automobile body, June 22, 1915, claims 3, 9, 10, 14, 19, 22, 23 to 31, inclusive, 38 and 39.

1,214,932, J. Ledwinka, vehicle top iron support, February 6, 1917, claim 4.

1,255,323, J. Ledwinka, removable upholstery for vehicles, February 5, 1918, claims 1, 2, 3, 7, and 8.

1,275,274, J. Ledwinka, automobile body, August 13, 1918, claims 1, 2, 11, 14, and 15.

There is in evidence on behalf of the defendant a large number of drawings, blueprints, models, patents, etc., relating to the prior art, and in considering the scope and validity of the patents I will make no attempt to refer to each of the prior art defenses, since, in view of the conclusions which I have reached, it would not add to a better understanding of my views to discuss in detail or compare the merits of each of the various defenses.

Patent No. 1,143,635 relates to the construction of an automobile body, the drawings illustrating that type known in the trade as the "torpedo body." The torpedo type of body was old in the art. The torpedo body of the prior art had a framework consisting of spaced side sills extending longitudinally of the body, crossbars for connecting the side sills, and vertically extending door posts carried by the side sills. The body side sills, the crossbars, and the door posts were of wood, and were rigidly secured together to form a skeleton frame for taking the strains and stresses to which the body would be subjected in use. Around this skeleton frame was placed a sheathing or shell of sheet metal, composed of a tonneau or rear seat section, an intermediate or front seat section, and a cowl section. These shell sections were provided with flanges, which engaged around the edges of and were secured by nails or screws to the door posts, and the bottom edges of the section were flanged inwardly underneath the side sills and attached thereto. An automobile body composed of a skeleton frame of wood and a shell or sheathing of metal is known in the trade as a "composite body." The composite type of body is the construction that has been, and to-day is, in most general use.

The shell or sheathing of the automobile body shown in the drawings of the Ledwinka patent, 1,143,635, like the shell or sheathing of the prior art composite body, is of metal, and also, like the shell of the composite body, it is made up of a tonneau or rear seat section, an intermediate or front seat section, and a cowl section. Instead of employing wood for the frame of patent 1,143,635, metal is used, but the general arrangement of the metal frame is the same as that of the wooden frame, namely, there are spaced side sills that extend longitudinally of the body, crossbars which secure the side sills together, and vertically extending door posts carried by the side sills. These parts of the skeleton frame are rigidly secured together. Flanges are formed on the shell sections to engage around the door posts, and to engage underneath the side sills. The skeleton frame parts are secured together, and the shell sections are attached to the frame by welding.

The general distinction between the composite torpedo type of body of the prior art and the torpedo type of body of patent 1,143,635 is that in the former the skeleton frame is made of wood, while in the latter it is made of metal, for the shell or sheathing in each case is of metal of the same gauge. Plaintiff urges that, by having the frame and the shell body of metal, these parts may be welded together to form a strong and rigid structure throughout. It is the contention of the plaintiff that this patent in suit should be given a very liberal construction, and, if it is entitled to the breadth of protection which the plaintiff seeks thereunder, the patent will be quite dominating. It is not disputed that the plaintiff has built up a large business in the manufacture of automobile bodies composed of all metal; but, while the plaintiff may have been quite successful in its exploitation of all-metal automobile bodies, it was not the first to form the skeleton frame of metal, nor the first to form the shell and the skeleton frame body of metal, and then weld or rivet these parts together to form a rigid structure throughout.

There are many prior art patents showing vehicle skeleton frames made entirely of steel or other metal pressed or otherwise shaped into the desired form. The parts of these metal frames were rigidly secured together by riveting or welding to form a

rigid skeleton frame, which took the stresses and strains. Likewise, the prior art patents disclose frames of all metal and shell portions of all metal, the shell and frame parts being rigidly connected together, as by riveting or welding. As examples, note the United States patent to McLaughlin, 722,-611 of 1903, the British patent, No. 12,992 of 1895, and the Ledwinka patent, 1,139,457 of 1915, the structure of which was manufactured and sold more than two years before June 17, 1914, the date of filing of patent 1,143,635.

There are in the prior art a number of prior use bodies made entirely of metal, some being for commercial automobiles and others for pleasure cars.

Before Joseph Ledwinka, patentee of patent No. 1,143,635, entered the employment of plaintiff company, he was in the employ of the Hale & Kilburn Company, of Philadelphia, Pa., as designer of all-metal automobile bodies. He left the employ of the Hale & Kilburn Company on or about June 6, 1912, or more than two years prior to the filing date of patent No. 1,143,635, and before he left the Hale & Kilburn Company manufactured and sold different types of bodies made entirely of steel; one type of body being represented by Ledwinka patent, 1,139,457, and other types of bodies being for trucks, light delivery cars, etc. These bodies made by Hale & Kilburn had a frame composed of longitudinal sills, cross-members, and vertical posts. The metal panel or shell sections were secured to the frame member. The latter were rigidly attached together and to the panel or shell sections by riveting or welding.

Hale & Kilburn not only manufactured the Ledwinka designs of all steel, but this concern manufactured touring car bodies of all metal, coupé bodies made entirely of metal, and one all-metal limousine body for the Hupp Motor Company, of Detroit, Mich. These bodies were the designs of E. A. Nelson, engineer of the Hupp Motor Car Company. Several thousand of the touring car bodies (referred to in the record as the Hupp–32) were made and sold; the Hale & Kilburn Company being in large production of the Hupp–32 body before the patentee, Ledwinka, left their employ.

The order for the Hupp coupé was received by the Hale & Kilburn Company before Mr. Ledwinka left their employ, but the first coupé was not shipped until after he had become connected with the plaintiff company. Likewise, while the order for the Hupp limousine was received before Mr. Ledwinka left the Hale & Kilburn Company, it was not completed until after he severed his connection with that company.

Each of these Hupp structures was composed of all metal; the sheathing or shell being made from metal stampings, and the frame members being of steel. Welding and riveting were used for securing the parts together. The Hupp–32 body differs from the usual automobile body, in that it was not provided with body side sills separate from the chassis sills. The tonneau section, the front seat section and the cowl section were made in separate units, and these units were bolted to the chassis sills. When assembled upon the chassis sills the latter also acted as body sills. Each of the sections of the Hupp–32 had metal frame members and metal shell members, and welding was employed for securing these members together.

The plaintiff places great emphasis upon the fact that the body of the patent in suit is a complete unit, but in this regard the patent does not depart from the composite type of torpedo body, as exemplified by the Cadillac body and other of the prior art structures.

Novelty cannot be predicated upon a skeleton frame of all metal, nor was it new to form a shell or sheathing of metal. The prior art also contains examples of structures having both the skeleton frame and the sheathing of metal; such examples being found in the prior art patents before mentioned, and in the bodies which were marketed from the designs of the patentee, Ledwinka, by the Hale & Kilburn Company, more than two years prior to the date of filing of the application for the patent in suit, No. 1,143,635. Riveting and welding were used, according to the patentee's testimony, in securing together the parts of these Hale & Kilburn bodies. Sometimes one mode of attachment was employed, and sometimes the other, depending upon the kind of joint desired.

I am unable to find any new step or definite thing which Ledwinka did upon which invention can be predicated. The situation gives the impression that, after the art had developed, the patentee, Ledwinka, has endeavored to go back and cover by a patent that which had become public property. A reference to the claims further convinces that he is endeavoring to bring under his patent those things which belong to the public.

As before stated, the plaintiff seeks to have the claims of this patent broadly construed. At the argument plaintiff used claim 19 as

representative of the claims sued upon. This claim is as follows:

"19. An automobile body comprising a skeleton frame having side members each made in one piece and having vertically extending integral portions to form door posts, means to connect said side members together, and a shell or sheathing applied and integrally secured to the exterior surface of the vertically extending integral portions of said skeleton frame."

The claim does not specify the material from which either the skeleton frame or the shell is made, and, except for the words "integral" and "integrally," the claim finds literal response in the Cadillac composite body of the prior art. If plaintiff's position is correct, and by the use of these words the claim should be interpreted as for a structure having the frame and shell composed of metal, the claim would not patentably differentiate from the Cadillac composite body. There could be no invention in making the skeleton frame of the Cadillac body of metal, instead of wood. Metal skeleton frames were old in the art. In the Hale & Kilburn prior art commercial bodies the skeleton frame had one-piece side members which carried vertical posts, and there were crossbars or braces extending between the side members. The metal sheathing or panels were secured to the skeleton frame; welding and riveting being employed as desired for securing the various parts together.

As welding was old and well known as a means for securing together the various parts of an automobile structure, even if the claim is restricted to a structure in which welding was employed as a securing means, welding could not add patentability to the claim. Riveting and welding are recognized mechanical equivalents. Higgin Mfg. Co. v. Watson et al., 263 F. 378–387, C. C. A. 6.

The patentee appreciated that the parts might be secured together in ways other than welding, since the specification describes the parts as secured together "by welding or otherwise." The patentee made no attempt in his specification to predicate invention upon welding, and, of course, he could not do so, and in plaintiff's commercial structure as exhibited to the court riveting is used to secure certain of the parts together.

It is not necessary to discuss in detail any of the remaining claims in suit, except claims 3 and 38, since both the plaintiff and defendant adopted claim 19 as a fair example of the remaining claims which include the skeleton frame and shell. Defendant distinguishes between claims 3 and 38 and the remaining claims in suit, in that claims 3 and 38 do not include any portion of the skeleton frame. These claims are anticipated by the shell of the Cadillac composite body which had the side portions welded, so that it was formed into one continuous structure and also by various prior art patents, such as the patent to Apel, 869,719, Thomas and Moore, 872,031, and others. At the hearing plaintiff sought to withdraw the claims 3 and 38, but since these claims were held patentable by the master defendant is entitled to have the claims passed upon by the court.

[8] Each and all of the claims in suit of the Ledwinka patent, No. 1,143,635, I find to be invalid.

In view of the finding of invalidity of the claims, it is not necessary for me to consider the question of infringement, for if the claims are construed as broadly as plaintiff urges, defendant admits infringement.

Patent No. 1,275,274 also relates to the construction of an automobile body. It differs in the main from the structure of patent No. 1,143,635, in that the skeleton frame of the earlier patent is dispensed with. In the specification of patent No. 1,275,274 is the following statement:

"In my patent No. 1,143,635, granted June 22, 1915, I have shown, described, and claimed a structure of sheet metal body for automobiles in which is employed a skeleton frame to take the stresses and strains and a shell applied to the exterior surface of the frame to give external appearance to the body.

"In my present structure I have dispensed with the skeleton frame, and so construct the shell and its associated members as to secure the desired rigidity, strength, and sturdiness of the body in the shell structure. In other words, in accordance with my present invention I propose to eliminate the skeleton frame of my former patent, and to so construct the shell and strengthening parts to be applied thereto and associated therewith as to enable it to take the stresses and strains, thereby greatly simplifying the structure, reducing the weight of the completed body, reducing the number of parts required, and enormously reducing the cost of production and assembly of the parts.

"I also propose to so construct the body shell as to afford additional strength and rigidity along its bottom longitudinal edge by the application thereto of sill members in such manner as to form therewith, in effect, a box girder which secures great strength to the body structure."

Claims 1 and 2 are directed to reinforcing the bottom longitudinal edge of the body shell, so that the body shell and its reinforcement form a box girder. Claim 1 is as follows:

"An automobile body shell built up of sheet metal stampings pressed to the shape and contour of the body lines to give external appearance to the body, said stampings being integrally united, and having an inturned flange at their lower edges, and a longitudinally extending stamping supported upon said in-turned flange, and secured thereto and to the vertical portions of the body shell stampings to form a box girder with the body shell, whereby the body shell is reinforced to enable it to wholly take the strains of usage."

There is only one construction of automobile body made by the defendant that plaintiff relies upon in its proof of infringement. This structure, for the purpose of infringement under patent No. 1,143,635, is said to have a skeleton frame to take the stresses and strains, yet patent No. 1,275,274 has for its object to dispense with the skeleton frame. The defendant's structure has longitudinally extending body sills that are connected together by cross-members to form what might be termed a base. The tonneau section, the front seat section, and the cowl section are made as separate units and assembled upon the base frame. When so assembled, the shell and frame members of these sections are rigidly connected with the base frame as by welding. After the various parts of defendant's structure are assembled and welded together, there is a body composed of a skeleton frame and a shell. While the lower edges of the shell sections are flanged underneath the side sills, it cannot be said that these side sills form a box girder with the body shell, so that "the body shell is reinforced to enable it to wholly take the strains of usage." Defendant's structure has a complete sill apart from the body shell, while in the structure of the Ledwinka patent, No. 1,275,274, the body shell is a part of the sill. Defendant's structure does not have a longitudinally extending stamping which forms a box girder with the body shell, whereby the body shell is reinforced to enable it to wholly take the strains of usage, but, on the other hand, it employs a skeleton frame to take the stresses and strains.

[9] It is not new with patent No. 1,275,-274 to reinforce the lower edge of a body. The patent to Adams, No. 1,190,112, March 10, 1914, discloses the use of an angle iron reinforcement for the lower edge of a body shell. The patent to McLaughlin, No. 722,-611, March 10, 1903, employs such a reinforcement in tubular form. The Hupp coupé and the Hupp limousine show reinforcements in the form of box girders. This prior art requires the claim to be very narrowly construed; in fact, makes the question of patentability very doubtful. I therefore find claim 1 not infringed; also claim 2, as it describes substantially the same structure as claim 1.

Claim 11 is directed to a particular formation of door sill. The claim does not read upon defendant's structure, and in view of the prior art this claim is not entitled to the range of mechanical equivalents which plaintiff seeks therefor in order to find infringement. Box girders at the door sills are found in the Hupp coupé, the Hupp limousine, and in the prior art Chevrolet body. Defendant's structure does not infringe claim 11.

Claims 14 and 15 are anticipated by the British patent to Bush, No. 9,174 of 1912, and the Hupp–32. It is impossible to distinguish these claims therefrom. I therefore find claims 11 and 12 invalid.

[10] Patent No. 1,255,323 is for removable upholstery for vehicles. In the structure of the patent the upholstery is constructed so as to be removable as a unit from the body. The upper edge of the body shell is provided with a channel-shaped portion, within which is arranged the top edge of the upholstery. The bottom of the detachable upholstery is seated in fork-shaped supporting arms that are adjustably mounted in the brackets. By adjusting these fork arms the upper edge of the upholstery is forced home in the inverted channel and held in place therein by the forks or supports. By reversing this operation—that is, by backing off the supports—the upholstery may be detached and removed from the body. In the defendant's structure the upper edge of the body shell is not provided with a channel for receiving the upholstery. The shell has an apertured flange at its top, and the upholstery carries pins that are inserted in the holes in the flange. The top edge of the upholstery in defendant's structure is without the flanged edge of the shell, rather than within a channel shaped flange, as in the Ledwinka patent, No. 1,255,323. No arms are employed by the defendant for adjustably supporting the upholstery. The latter merely rests upon the seat pan. To position the upholstery in place in defendant's structure the upper edge of the upholstery

is arranged so that the pins engage the apertures in the flange on the shell, and the lower edge of the upholstery is then moved inwardly towards the shell until it rests upon the seat pan.

Ledwinka did not invent detachable upholstery for vehicles. That was old in the prior art. See patents to Van Campen, No. 309,750; Mankel, 338,537; Merril, 227,913; Brunsman et al., 481,745. Likewise the prior art shows it to be old to retain the upper edge of the detachable upholstery in place against a flange or abutment. This is shown in Bezold, 997,737; Woola, 844,224; Lucas, 168,098; Cobb, 157,377. In view of this art, if the claims in suit are to be saved, they must be very narrowly construed.

I find defendant's structure does not infringe, as it does not have a channel at the upper edge of the shell within which the upper edge of the upholstery is arranged, nor does it have the equivalent of the adjustable fork arms. The claims must be limited to these features in order to be valid.

[11] Ledwinka patent, No. 1,214,932, is upon a support for a vehicle top iron. As top irons have been used since the earliest carriage days, any novelty in the structure of this patent must reside in the more detailed features thereof. In the structure shown in the drawings, a strap is applied to the inner surface of the shell of the body, and to this strap is attached a supporting member, which also engages the inner face of the body shell. The top iron proper consists of a shouldered member, which has a threaded portion that extends through the shell and the supporting member. A nut is applied to the threaded end of the top iron for clamping the latter in place.

Claim 4, which is the only claim in suit, is as follows:

"4. In a top iron support for vehicles, and in combination with the vehicle body shell, a strap applied to the inner surface of said shell, a supporting member also applied to the inner surface of said shell and secured to said strap, a supporting iron having a shouldered end extended through the shell from the outside, and through said supporting member, and a nut applied to said iron end to clamp the parts together."

Defendant urges that the top iron and its support as used in the Hupp–32 is a complete anticipation. In the Hupp-32 structure there is a strap applied to the inner surface of the shell, and also a supporting member applied to the inner surface of the shell

and secured to the strap. The top iron proper, or supporting iron, has a threaded end. This threaded end extends through the shell and engages a threaded bushing carried by the supporting member. The threaded bushing is, of course, the full equivalent of a nut.

Claim 4 is held invalid, in view of the top iron and its support found in the Hupp–32. In view of this finding, it is not necessary to consider the question of infringement.

In view of the conclusions which I have reached, the master's report should be modified accordingly.

The injunction now running against the defendant will be modified in accordance with this opinion. Costs will be evenly divided between the parties, except costs on the exceptions will be awarded in accordance with equity rule 67. An order will be entered accordingly.